**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Robert E. Blackburn**

Civil Action No. 21-cv-02957-REB-MEH

SHAWN COOPER,

     Plaintiff,

v.

SHELTER GENERAL INSURANCE COMPANY,

     Defendant.

---

## ORDER RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

**Blackburn, J.**

     This matter is before me on **Defendant's Motion for Summary Judgment** [#24],[1] filed February 25, 2022, as supplemented by **Defendant's Supplement to Motion for Summary Judgment** [#62], filed November 30, 2022.  (**_See also_ Order** [#61], filed November 10, 2022 (requesting supplemental briefing from the parties).)[2]  I grant the motion in part and deny it in part.

## I.  JURISDICTION

     I have jurisdiction over this matter pursuant to 28 U.S.C. § 1332 (diversity of citizenship).

## II.  STANDARD OF REVIEW

---

     [1]  "[#24]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF).  I use this convention throughout this order.

     [2]  Given my resolution of the summary judgment motion, I again express my apologies to the parties for not appreciating the significance of their arguments at the time they were first raised.  _Mea culpa_.

Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.  **FED. R. CIV. P.** 56(a); ***Celotex Corp. v. Catrett***, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).  A dispute is "genuine" if the issue could be resolved in favor of either party.  ***Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.***, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); ***Farthing v. City of Shawnee***, 39 F.3d 1131, 1135 (10th Cir. 1994).  A fact is "material" if it might reasonably affect the outcome of the case.  ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); ***Farthing***, 39 F.3d at 1134.

A party who will not have the burden of proof at trial must show the absence of a genuine fact issue.  ***Concrete Works, Inc. v. City & County of Denver***, 36 F.3d 1513, 1517 (10th Cir. 1994), ***cert. denied***, 115 S.Ct. 1315 (1995).  Once the motion has been properly supported, the burden shifts to the nonmovant to show, by tendering depositions, affidavits, and other competent evidence, that summary judgment is not proper.  ***Id.*** at 1518.  All the evidence must be viewed in the light most favorable to the party opposing the motion.  ***Simms v. Oklahoma ex rel Department of Mental Health and Substance Abuse Services***, 165 F.3d 1321, 1326 (10th Cir.), ***cert. denied***, 120 S.Ct. 53 (1999).

### III.  ANALYSIS

On September 25, 2019, plaintiff Shawn Cooper was injured in an automobile accident in Denver, Colorado.  Mr. Cooper was insured by defendant Shelter General Insurance Company ("Shelter"); the at-fault driver was uninsured.  On April 6, 2021, Mr.

Cooper made a claim for uninsured/underinsured motorist (UIM") coverage under the terms of his policy.  The following day, the claims adjuster, Virginia Ris, sent counsel a letter acknowledging receipt of Mr. Cooper's "settlement demand packet." (**Motion App.**, Exhs. B & C ¶ 5 at 1.)  Mr. Cooper does not contest that characterization of the documents his counsel sent to Shelter (**Resp. ¶** II.5. at 3), nor is there any evidence to suggest he did so at the time the letter was received.[3]

In evaluating the claim, Ms. Ris noted substantiated past medical expenses of $2,256.  However, Mr. Cooper's most recent medical bill was from November 2019, more than eighteen months prior, despite the fact that medical records indicated further treatment had been suggested for him.  (**Motion App.**, Exh. D at 3.)  On April 27, Ms. Ris called Mr. Cooper's attorney to inquire.

> I asked if treatment ended in November of 2019 as we do not have any records or bills beyond that date - he advised [insured] did not seek any additional treatment after November of 2019 due to treatment fatigue.  At this time, he is simply living with the pain from this loss and it is not clear if he will resume treatment.

(*Id.*, Exh. D at 4.)

Based on the information before her, Ms. Ris estimated Mr. Cooper's damages for past and future pain and suffering at $12,774 to $17,744 and valued his claim at $15,000 to $20,000.  On April 27, she offered Mr. Cooper $15,000 on his claim plus a **Fisher**[4] payment of $2,256, i.e., the amount of Mr. Cooper's substantiated past medical

---

[3]  The documents which comprised the "settlement package" are not part of the record before me.

[4]  Referring to **Fisher v. State Farm Mutual Automobile Insurance Co.** ("**Fisher I**"), 419 P.3d 985 (Colo. App. 2015), **aff'd**, 418 P.3d 501 (Colo. 2018) ("**Fisher II**").

expenses.  (**Motion App.**, Exh. C ¶ 6 at 1-2, Exh. D at 4.)  According to Ms. Ris, in response to that proposal, counsel for Mr. Cooper told her he "wanted to see if the parties could settle the case outright before Shelter made any *Fisher* payment."  (*Id.*, Exh. C ¶ 8 at 2.)  Mr. Cooper does not contest Ms. Ris's testimony that his counsel made that statement.  (*See* **Resp.** ¶ II.5. at 3.)

In response to Shelter's opening offer, Mr. Cooper made a counteroffer of $30,000, and Ms. Ris countered at $20,000, the upper limit of her claim evaluation. Counsel told Ms. Ris he would speak to Mr. Cooper about that offer.  (*Id.*, Exh. C ¶ at 2-3.)  The following day, Mr. Cooper demanded $25,000 and Shelter agreed to that amount.  (*Id.*, Exh. C ¶ 10 at 3.)

Ms. Ris subsequently sent Mr. Cooper a letter purportedly confirming the parties' agreement.  Attached thereto was a copy of Shelter's Receipt and Trust Agreement (the "Agreement"), which Ms. Ris represented Mr. Cooper needed to sign to allow Shelter to enforce its subrogation rights against the at-fault driver.  (**Motion App.**, Exhs. E & F.)  In actuality and instead, the Agreement released Shelter from all further liability for damages under the UIM provisions of the insurance policy.  (*Id.*, Exh. L.)

Counsel for Mr. Cooper responded the following day:

> I'm a little bit confused because I've not seen a UM carrier request such an agreement in the past.  Since he's making a claim for first-party benefits, rather than attempting to settle a liability claim, there's really not anything to settle.  He should be permitted to leave the claim open and seek additional benefits if he decides to get collision-related insurance in the future[.]

 (**Motion App.**, Exh. H at 1.)  A month later, counsel asked whether Shelter was willing

to "issue payment" of the $25,000 "without cutting off Mr. Cooper's ability to pursue treatment in the future[.]"  When Ms. Ris indicated she was inquiring with her supervisor, counsel asked whether Shelter would issue the money as a *Fisher* payment.  (*Id.*, Exh. I.)

On June 14, 2021, Ms. Ris confirmed Shelter would require a signed Agreement to release any payment other than *Fisher* payments for past medical expenses, which she offered to forward to Mr. Cooper.  (*Id.*, Exh. J.)  Although Mr. Cooper agreed to assign his rights to Shelter to allow it to pursue the at-fault driver, he declined to sign the Agreement releasing future claims.  Instead, he took the position that Shelter already had agreed he was entitled to non-economic benefits of $25,000.  (*Id.*, Exh. K.)


Two weeks later, Shelter sent Mr. Cooper a *Fisher* payment of $2,256, which he concedes represents his past medical expenses.  Mr. Cooper again demanded a payment of $25,000.  (*Id.*, Exh. C ¶ 16 at 3-4; Exh. M.)  Shelter demurred and advised it would keep Mr. Cooper's file open for consideration of any further accident-related treatment he might receive.  (*Id.*, Exh. C. ¶ 17 at 4; Exh. N.)  This suit followed not long thereafter.

Herein, Mr. Cooper brings claims against Shelter for breach of contract and for common law and statutory bad faith under Colorado law.  Shelter initially moved for summary judgment as to all three claims, but in light of Mr. Cooper's arguments response, withdrew its motion with respect to the breach of contract claim.  (**Reply** at

6.)[5]  Accordingly, the motion will be denied as to that claim.  I thus turn to the only

question before me:  whether Shelter is entitled to summary judgment as to Mr.

Cooper's bad faith claims.

Because the question whether the insurer's actions were unreasonable is

common to both claims, I begin (and, ultimately, end) there.  In addition to the statutory

provisions of Colorado law creating a cause of action for bad faith breach of insurance

contract, *see* §§ 10-3-1115 & 1116, C.R.S., Colorado recognizes a common law claim

for bad faith breach of insurance contract, *see Masters v. Safeco Insurance Co. of*

*America*, 2021 WL 4326269 at *5 (D. Colo. Sept. 23, 2021); *Hyden v. Farmers*

*Insurance Exchange*, 20 P.3d 1222, 1226 (Colo. App. 2000).  Although related, these

rubrics create distinct claims with different legal standards of proof.

Under the statute, an insurer may not "unreasonably delay or deny payment of a

claim for benefits owed to or on behalf of any first-party claimant," § 10-3-1115(1)(a),

C.R.S.  "[T]he only element at issue in the statutory claim is whether an insurer denied

benefits without a reasonable basis."  *Williams v. Owners Insurance Co.*, 621 Fed.

Appx. 914, 919 (10th Cir. 2015) (quoting *also Vaccaro v. American Family Insurance*

*Group*, 275 P.3d 750, 760 (Colo. App. 2012)) (internal quotation marks omitted).  By

contrast, to prove a first-party claim of common law bad faith, a plaintiff must show not

only that the insurer's conduct in processing or denying a valid claim was unreasonable

but also that the insurer knew its conduct was unreasonable or recklessly disregarded

---

[5]  Shelter does so in recognition that although the complaint alleged breach of contract based on Shelter's *denial* of UIM benefits (**see Complaint** ¶ 58 at 5 [#6], filed November 4, 2021), his response to the motion for summary judgment suggests his claim challenges the *amount* of benefits to which he is entitled (**Resp.** at 9).  Shelter agrees questions of fact remain as to the value of Mr. Cooper's claim for benefits and thus withdraws its motion as to the breach of contract claim.

6

the unreasonableness of its conduct. *Travelers Insurance Co. v. Savio*, 706 P.2d 1258, 1275-76 (Colo. 1985); *Hyden*, 20 P.3d at 1226. *See also Vaccaro*, 275 P.3d at 756. Accordingly, a claim of common law bad faith imposes a more exacting standard of proof than a statutory claim. *Williams v. Steadfast Insurance Co.*, 2020 WL 13499467 at *3 (D. Colo. July 27, 2020), *adopted*, 2020 WL 13499466 (D. Colo. Sept. 23, 2020). *See also Riccatone v. Colorado Choice Health Plans*, 315 P.3d 203, 210 (Colo. App. 2013) (citing comments during Colorado General Assembly legislative debate describing the common law standard as "too high" and clarifying "the purpose of the bill was to create a less onerous standard in the first-party context").

Under either rubric, an insurer acts unreasonably if it "delay[s] or denie[s] authorizing payment of a covered benefit without a reasonable basis for that action." § 10-3-1115(2), C.R.S. *See Savio*, 106 P.2d at 1275 (common-law bad faith claim, requires "absence of a reasonable basis for denial of policy benefits" or "knowledge or reckless disregard of a reasonable basis for a denial") (citation and internal quotation marks omitted). Although not outcome determinative, *see Fisher v. State Farm Mutual Automobile Insurance Co.*, 419 P.3d 985, 989-90 (Colo. App. 2015) ("*Fisher I*"), *aff'd*, 418 P.3d 501 (Colo. 2018) ("*Fisher II*"), evidence by which a reasonable person could find the insurer's benefits decisions "fairly debatable" weighs against a conclusion that the insurer acted unreasonably. *See Etherton v. Owners Insurance Co.*, 829 F.3d 1209, 1226 (10th Cir. 2016); *Vaccaro*, 275 P.3d at 759–60. "In Colorado, acting 'without a reasonable basis' has been construed to mean pursuing a groundless position that is not supported by credible evidence." *Masters*, 2021 WL 4326269 at *5.

7

The standard of reasonableness *vel non* is what a reasonable insurer would have done under similar circumstances.  ***Id.***; ***Estate of Morris v. COPIC Insurance Co.***, 192 P.3d 519, 523 (Colo. App. 2008).  Reasonableness is "determined objectively, based on proof of industry standards."  ***Goodson v. American Standard Insurance Co.***, 89 P.3d 409, 415 (Colo. 2004).  Although the question of reasonableness under the circumstances is ordinarily a question of fact for the jury, ***Estate of Morris***, 192 P.3d at 524, "in appropriate circumstances, as when there are no genuine issues of material fact, reasonableness may be decided as a matter of law," ***Zolman v. Pinnacol Assurance***, 261 P.3d 490, 497 (Colo. App. 2011), ***cert. denied***, 2011 WL 3276356 (Colo. Aug. 1, 2011).  ***See also Traurig v. Owners Insurance Co.***, 2022 WL 843888 at *3 (D. Colo. March 22, 2022).

In framing their arguments initially and now as supplemented following the close of discovery, the parties essentially argue past each other.  Mr. Cooper insists Shelter is suggesting non-economic benefits can never be undisputed or the subject of a corresponding obligation to pay under ***Fisher***.  His position may be correct legally, ***see Olsen v. Owners Insurance Co.***, 2022 WL 1663121 at *5 (D. Colo. May 25, 2022); ***Masters***, 2021 WL 4317112 at *6,[6] but it misconstrues the nature of Shelter's

---

[6] Despite these decisions, there is also authority in this district to the effect that "there is no sum certain to which an insured is entitled for non-economic damages," ***Nyborg v. State Farm Mutual Automobile Insurance Co.***, 2021 WL 662305 at *6  (D. Colo. Feb. 19, 2021), ***adopted***, 2021 WL 1115936 (D. Colo. March 24, 2021), or, even more strongly,

> ***Fisher II*** was decided only in the context of undisputed medical bills, which are concrete, quantifiable expenses that cannot reasonably be disputed if they are reasonable, necessary, and causally related to the underlying accident.  No Colorado appellate court has expanded the ***Fisher II*** payment obligation beyond undisputed medical bills.

***Hallaren v. Geico Casualty Co.***, 2021 WL 4133915 at *5 (D. Colo. Sept. 10, 2021) (citation omitted).

arguments.  Shelter instead avers the parties were engaged in settlement negotiations and therefore that the amount of Mr. Cooper's non-economic benefits remained in dispute throughout, making its refusal to pay such benefits reasonable under the circumstances.  The summary judgment evidence plainly shows Shelter has the better of this argument.

There is ample authority, both in Colorado and from this circuit, to support the proposition that an insurer's settlement offer does not constitute a concession the insured is indisputably owed the amount offered.  The arguments and authorities in support of that conclusion have been examined comprehensively and cogently by a number of my colleagues, and I see no reason to do more than note my agreement with their analyses and conclusions.  *See Signature Development Cos., Inc. v. Royal Insurance Co. of America*, 230 F.3d 1215, 1223-24 (10th Cir. 2000) (collecting cases); *Burnett v. State Farm Mutual Automobile Insurance Co.*, 2022 WL 12082668 at *4-*5 (D. Colo. Oct. 4, 2022), *adopted*, 2022 WL 11732841 (D. Colo. Oct. 20, 2022)*; McKinney v. State Farm Mutual Automobile Insurance Co.*, 2021 WL 4472921 at *5-*6 (D. Colo. Sept. 30, 2021); *Hallaren v. Geico Casualty Co.*, 2021 WL 4133915 at *5, *7-9 (D. Colo. Sept. 10, 2021);[7] *Nyborg v. State Farm Mutual Automobile*

---

*See Burnett v. State Farm Mutual Automobile Insurance Co.*, 2022 WL 12082668 at *5 (D. Colo. Oct. 4, 2022) (citing *Nyborg*), *adopted*, 2022 WL 11732841 (D. Colo. Oct. 20, 2022).  I do not resolve the discrepancy in these authorities here, but instead assume *arguendo* that an insurer may be subject to pay non-economic benefits under *Fisher*.

[7] Likewise, I agree with Magistrate Judge Neureiter in his assessment that the unpublished decision of a Colorado district court, in which the court held an insurer's settlement analysis constituted a concession that a particular amount of benefits was owed, is neither supportable under Colorado law nor binding on this court.  *See Hallaren*, 2021 WL 4133915 at *9 (citing *Fear v. Geico Casualty Co.*, 2021 WL 6880623 (Denver Dist. Ct., July 26, 2021)).  (Shelter informs the court this decision is presently on appeal, but no opinion from the Colorado Court of Appeals appears to have been issued yet.)

*Insurance Co.*, 2021 WL 662305, at *6 (D. Colo. Feb. 19, 2021), **adopted**, 2021 WL 1115936 (D. Colo. March 24, 2021); **Anchondo-Galaviz v. State Farm Mutual Automobile Insurance Co.**, 2019 WL 8267701 at *7 (D. Colo. Nov. 14, 2019), **adopted**, 2019 WL 8267699 (D. Colo. Dec. 9, 2019).

Mr. Cooper insists these precedents are inapposite because the amount of non-economic benefits here was not in dispute.  *See Masters*, 2021 WL 4317112 at *6.  He therefore claims a jury could find Shelter acted unreasonably both by failing to pay him the purportedly undisputed amount, *see McKinney*, 2021 WL 4472921 at *6 (citing **Hatfield v. Liberty Mutual Insurance Co.,** 98 Fed. Appx. 789 (10th Cir. 2004)), and in insisting he sign a release before it would do so, *see Carpenter v. American Family Mutual Insurance Co.*, 2015 WL 8529775 at *2 (D. Colo. Dec. 11, 2015).

I cannot agree.  Regardless whether Mr. Cooper's premise finds support in law, it does not in the record before me.  Construing the evidence in the light most favorable to Mr. Cooper, no reasonable jury could conclude Shelter's $25,000 offer constituted a concession of the amount of Mr. Cooper's non-economic benefits or, indeed, anything other than an offer to settle his claims.

Negotiations between the parties began after counsel for Mr. Cooper sent Ms. Ris documents which she characterized in a letter acknowledging their receipt as a "settlement demand package."  (**Motion App.**, Exh. B; *id.*, Exh. C ¶ 5 at 1.)  From that fact alone, Mr. Cooper cannot have been unaware that Shelter considered his demand a request for settlement.

Nevertheless, he asserts that during subsequent negotiations, the parties

10

"verbally agreed" he was "entitled" to $25,000 in benefits.  (**See Resp.** ¶ 8 at 3.)  I note

how carefully worded this allegation is, as it is not at all clear that Mr. Cooper's

"entitlement" to benefits is the same thing as a concession from Shelter that damages

in that amount were "undisputed."  Yet even assuming *arguendo* it is, the evidence

does not support the inference Mr. Cooper would have me draw.  For even if Mr.

Cooper believed Shelter considered this offer to represent his undisputed non-

economic benefits (***see* Motion App.**, Exh. H at 1),[8] Ms. Ris plainly did not share his

conception of their discussions (***id.***, Exh. C ¶ 7-10 at 2-3).[9]  While that discrepancy

might create a fact issue in other circumstances, in this case, Mr. Cooper has not put

forward any admissible evidence, such as a contemporaneous note to counsel's files or

similar memorialization of counsel's conversations with Ms. Ris, to support this

allegation.[10]

    In addition, the evidence shows Ms. Ris valued Mr. Cooper's non-economic

---

[8]  I am nonplussed by the argument counsel for Mr. Cooper put forth on receipt of the Agreement from Shelter.  (**Motion App.**, Exh. H at 1 ("I've not seen a UM carrier request such an agreement in the past.  Since he's making a claim for first-party benefits, rather than attempting to settle a liability claim, there's really not anything to settle.").)  I am unaware of any legal authority or provision of the insurance policy, and Mr. Cooper points to none, preventing an insurer from seeking a release of a claim for first-party insurance benefits other than in the context of an effort to settle a claim, and Mr. Cooper does not enlighten me on the matter.  As I am not required to undertake this work on his behalf, I do not consider the legal merits, or lack thereof, of this argument.  ***See Center for Biological Diversity v. Pizarchik***, 858 F.Supp.2d 1221, 1230 n.11 (D. Colo. 2012) ("[The] court does not consider cursory, unsupported, or otherwise inadequately briefed arguments.") (citation and internal quotation marks omitted).

[9]  That testimony is buttressed by the contemporaneous claim file notes, in which Ms. Ris noted that following her initial offer, counsel for Mr. Cooper "advised he would rather speak with his client to see if we can *settle* outright before I make a ***Fisher*** payment."  (**Motion App.**, Exh. D at 4 (emphasis added).)  Here again, Mr. Cooper offers nothing contradicting Ms. Ris's recollection of what counsel said to her.

[10]  Unsurprisingly, counsel did not submit an affidavit in support of his recollection of the conversations between himself and Ms. Ris.  Given the other holes in Mr. Cooper's summary judgment evidence (and the fact that counsel does not suggest he would have provided such testimony would it not make him a material witness), I cannot find any disadvantage in this regard is unduly prejudicial.

damages as between $12,774 and $17,744.[11]  Coupled with the undisputed past

medical expenses of $2,256, it should come as no surprise then that she assigned his

claim a value of $15,000 to $20,000.  Given that Mr. Cooper sought no medical

treatment in the more than 18 months prior to this conversation, and that counsel

explicitly represented it was not clear when, if ever, Mr. Cooper would resume

treatment, it is entirely counterintuitive to believe Ms. Ris inexplicably concluded the

claim was worth twenty-five percent more than the upper limit of the range she initially

found supportable on the evidence.[12]  More to the point, Mr. Cooper presents no

evidence which would support such an inference.


The evidence regarding the course of these negotiations likewise fails to support

a reasonable inference that Shelter's offer represented a concession that any particular

amount of benefits was owed.  As noted above, the parties' original offer and

counteroffer were $15,000 and $30,000, respectively.  Shelter then offered $20,000

and Mr. Cooper countered at $25,000, the amount to which the parties ultimately

agreed (or thought they had).  Here again, there is no evidence indicating Mr. Cooper

---

[11]  That Shelter "assigned a value" representing non-economic damages to Mr. Cooper's claim says nothing as to whether it disputed his entitlement to a payment in this range, let alone an offer ultimately substantially above it.  (*See* **Supp. Resp.** at 9 & **App.**, Exh. Z at 73-74.)  The other pages of the deponent's testimony to which Mr. Cooper cites for this proposition show only that Shelter believed Mr. Cooper had suffered non-economic losses as a result of the accident, not that it assigned any particular value to those losses.

[12]  Mr. Cooper's representation that at the time it sought the liability release, Shelter "had reason to believe that [Mr. Cooper] desired to seek additional collision-related care in the future" (Resp. ¶ 32 at 6) is not supported by the evidence he cites (*see* **Motion App.**, Exh. D at 3 (noting in November 2019 that Mr. Cooper's medical records indicated further treatment recommended); *id.*, Exh. D at 4 (representation of counsel that Mr. Cooper "was not clear if he will resume treatment"); **Resp. App.**, Exh. U ¶ 62 at 11 (noting simply "it appears that [Shelter] was aware of an intention by [Mr. Cooper] to seek additional collision-related care in the future" without regard to when Shelter allegedly first became aware of that intention).)

produced more or different evidence of his non-economic damages which might have convinced Shelter to value his claim $5,000 higher than the upper limit of its initial valuation.  Indeed, this course of events more resembles a traditional settlement negotiation than it does an acknowledgment or concession that the final offer represented Mr. Cooper's non-economic damages.

Thus, at best, the admissible evidence in the summary judgment record establishes the parties had a fundamental misunderstanding as to the very nature of the agreement they had reached.  More importantly, Mr. Cooper has not adduced sufficient evidence to create a genuine dispute of material fact which would allow a reasonable jury to conclude Shelter's belief was wrong, let alone unreasonable.  Because Shelter reasonably believed it was engaging in settlement negotiations, its $25,000 offer was not tantamount to a concession that Mr. Cooper's entitlement to that – or any – amount of benefits was undisputed.  *McKinney*, 2021 WL 4472921 at *5 (citing *Fisher I*, 419 P.3d at 988).  In other words, Shelter's position was at least fairly debatable.  *See Wagner v. American Family Insurance Co.*, 569 Fed. Appx. 574, 580 (10th Cir. 2014); *Masters*, 2021 WL 4326269 at *5.  Although that consideration is not determinative in itself, *see Etherton*, 829 F.3d at 1226-27, coupled with the lack of admissible evidence contradicting Shelter's position, no reasonable juror could find that position was groundless or lacked a reasonable basis, *see Masters*, 2021 WL 4326269 at *5.  Because the amount of such benefits remained in dispute, it was not unreasonable for Shelter to withhold payment, as a *Fisher* payment or otherwise.

To the extent the other iterations of Mr. Cooper's claims do not fall with the failure of this central premise, I reject them.  The only one of these arguments

13

presented adequately for my consideration[13] is Mr. Cooper's argument that Shelter's

attempt to require him to sign a liability release as a condition of receiving payment was

unreasonable.[14]  To the contrary, Colorado law not only permits parties to settle

disputes, it encourages it.[15]  *See Colorado Insurance Guarantee Association v.*

*Harris*, 827 P.2d 1139, 1142 (Colo. 1992); *Davis v. Flatiron Materials Co.*, 511 P.2d

28, 32 (Colo. 1973).  Colorado law also permits an insured to "agree to a term of

settlement and release as the insured sees fit, 'so long as [the term] does not violate

statutory prohibitions or public policy.'"  *Arline v. American Family Mutual Insurance*

*Co.*, 431 P.3d 670, 672 (Colo. App. 2018) (quoting *Fox v. I-10, Ltd.*, 957 P.2d 1018,

1022 (Colo. 1998)), *cert. denied*, 2018 WL 6497033 (Colo. Dec. 10, 2018) (alteration

---

[13] Mr. Cooper raised a number of other suggested ways in which he claimed Shelter demonstrated bad faith in his response to the original motion – which he purports to reiterate in his supplemental response – including that Shelter refused to consider any damages for physical impairment, failed to promptly communicate with him, and failed to provide a reasonable explanation of its offers.  (*See* **Resp.** at 8**; Supp. Resp.** at 2 n.2.)  Yet he offers no argument and points to no evidence in the record from which a reasonable jury might conclude Shelter acted unreasonably in any of these particulars.  This court is neither required nor inclined either to consider insubstantially briefed arguments, *Lucas v. Office of Colorado State Public Defender*, 2016 WL 9632933 at *5 (D. Colo. Aug. 25, 2016), *aff'd*, 705 Fed. Appx. 700 (10th Cir. 2017), *cert. denied*, 138 S.Ct. 99 (2018), or to scour the record in support of evidence in support of Mr. Cooper's allegations, *Center for Biological Diversity*, 858 F.Supp.2d at 1230 n.11; *see also* **D.C.COLO.LCivR** 7.1(d) ("[A] motion involving a contested issue of law shall . . . be supported by a recitation of legal authority in the motion.").  I thus consider such arguments waived.

[14] That Shelter had a corporate form that allowed it to pay non-economic losses while leaving a claim open to allow the insured to pursue medical treatment in the future did not obligate it to use that form in this or any other particular case.  (*See* **Supp. Resp. App.**, Exh. AA.)  Moreover, although this form is not in the record before me, the document to which Mr. Cooper refers states the form "may be appropriate for a claim where future medical care or wage loss is reasonably likely[.]" (*Id.*)  Given the long lapse in Mr. Cooper's medical treatment and his counsel's indication that it was unclear he whenm, if ever, he might resume treatment in the future (*see* **Motion App.**, Exh. D at 4), no reasonable factfinder could conclude Shelter had any obligation to offer Mr. Cooper this form of resolution.

[15] Mr. Cooper refers the court to *Wahlert v. American Standard Insurance Co. of Wisconsin*, 173 F.Supp.3d 1187 (D. Colo. 2016), in which the court determined an insurer's demand that its insured sign a release before the insurer would release payment created a fact issue as to whether the insurer unreasonably delayed or denied benefits under the policy.  *Id.* at 1197-98.  The opinion does not make clear what factors led the court to so conclude in that specific instance, and because that decision otherwise appears to be contrary to Colorado law, I respectfully decline to follow its lead in this case.

14

in original).  Colorado courts have affirmed that releases of UIM claims in furtherance

of settlement do not violate public policy, *id.* at 672-74, and the Tenth Circuit has

concluded the Colorado Supreme Court would agree, ***McCracken v. Progressive***

***Direct Insurance Co.***, 896 F.3d 1166, 1173-75 (10th Cir. 2018).[16]  Indeed, no less an

authority than ***Fisher*** itself confirms an insurer's right to seek a release to settle a

claim.  ***See Fisher I***, 419 P.3d at 988.  As nothing precluded or limited Shelter's ability

to require a signed release of future claims as a condition of resolving Mr. Cooper's

claims, its insistence he execute one was not unreasonable as a matter of law.[17]

## IV.  ORDERS

For these reasons, Shelter is entitled to summary judgment as to Mr. Cooper's

claims for statutory and common law bad faith, and its motion for summary judgment

will granted as to those claims.

---

[16]  Both the ***Arline*** and ***McCracken*** courts also distinguished the Colorado Supreme Court's decision in ***Kral v. American Hardware Mutual Insurance Co.***, 784 P.2d 759 (Colo. 1989), which Mr. Cooper cites in support of his arguments.  (**Resp.** at 14.)  As does Mr. Cooper here, the plaintiffs in ***McCracken*** argued that "***Kral*** shows that the policy in favor of ensuring full compensation for UM/UIM claims is so strong that parties cannot contract around it, even when settling an existing claim that the parties have had a full and fair opportunity to valuate."  ***McCracken***, 896 F.3d at 1175.  Both courts rejected that interpretation:

> As the Colorado Court of Appeals in ***Arline*** recognized, "***Kral*** does not hold that insured parties are required to accept nothing less than full compensation for their losses." [citation omitted.]  Indeed, if ***Kral*** stands for the proposition that UM/UIM claimants can never settle for less than the full value of their claims, then insurers would rarely have an incentive to settle.  We cannot conclude that Colorado's policy favoring full recovery of UM/UIM benefits is so strong that it warrants this result.

*Id.*

[17]  Relatedly, I reject Mr. Cooper's contention that Shelter engaged in bad faith by requiring he sign a liability release because the policy provided it only with the right to require him to assign his right to subrogate, not release all future claims.  Shelter' right to request a release do not arise from the contract of insurance, but instead from ordinary principles of contract law as applicable to and applied in the context of settlement agreements.

**THEREFORE, IT IS ORDERED** as follows:

1.  That **Defendant's Motion for Summary Judgment** [#24], filed February 25, 2022, is granted in part and denied in part:

    a.  That the motion is granted with respect to Mr. Cooper's claims for common law bad faith and statutory bad faith, and those claims are dismissed with prejudice; and

    b.  That the motion is denied as to Mr. Cooper's claim for breach of contract;

2.  That at the time judgment enters, judgment with prejudice shall enter on behalf of defendant Shelter General Insurance Company and against plaintiff Shawn Cooper as to Mr. Cooper's claims for common law bad faith and statutory bad faith; and

3.  That at the time judgment enters, Shelter shall be awarded its costs related to the bad faith claims, to be taxed by the clerk pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

Dated January 31, 2023, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge

16